**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **V.** | * | **CRIMINAL NO. ELH-19-358** |
| | * | |
| **FELICIANO DIAZ-MARTINEZ,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | ******* | |

## GOVERNMENT'S CONSOLIDTED RESPONSE TO DEFENDANT'S PRE-TRIAL MOTIONS

The United States of America, by its undersigned attorney, respectfully files this response to the defendant's motions.   Specifically, this combined response will address:

1.      Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants (ECF 38);

2.      Defendant's Motion to Suppress In and Out-of-Court Identification (ECF 39);

For the reasons set forth below, the defendant's motions should be denied.

### I.      PROCEDURAL BACKGROUND

The defendant, Feliciano Diaz-Martinez ("Diaz") is charged in a ten-count superseding indictment alleging one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a) and (b)(2) ; one count of enticement of a minor to engage in prostitution, in violation of 18 U.S.C. § 2422(b); seven counts of sex trafficking by fraud, force and coercion in violation of 18 U.S.C. § 1591(a) and (b)(1); and one count of distribution of controlled substances, in violation of 21 U.S.C. § 841 The superseding indictment was returned by a federal grand jury on October 3, 2019 (ECF 16). The present motion to suppress evidence pursuant to search warrants (ECF

1

38) and motion to suppress in-court and out-of-court identification was filed on November 13, 2020. A motions hearing is scheduled for October 1, 2021; trial is set to begin November 1, 2021.

## II.  FACTUAL BACKGROUND

Beginning in approximately 2016, continuing until his arrest on May 22, 2019, the defendant caused more than 40 victims to engage in commercial sex acts for his own financial benefit. The defendant caused many of the victims to engage in commercial sex by means of force, fraud, and coercion. Nearly all of the victims the defendant trafficked in the commercial sex trade, suffered from serious substance abuse disorders, including addictions to heroin (referred to as "boy"), "crack cocaine" cocaine base, (referred to as "girl"), and Xanax. During this several year time frame, the defendant was engaging in sex trafficking of the victims daily, and at all hours of the day and night. He would frequently wake the victims up in the middle of the night and force them to perform commercial sex acts with his customers.

The defendant routinely took half or all of the money the victims working for him had earned through commercial sex acts and kept it for himself. The defendant also sold narcotics, including heroin and crack cocaine, to some of the victims who engaged in commercial sex for his financial benefit, often at prices significantly higher than the prices he paid to purchase the narcotics.

In order to punish the victims, the defendant withheld controlled substances from the victims, whom he knew to be addicted, when they failed to earn sufficient money from commercial sex to satisfy him or when they violated rules he had imposed upon them. The defendant refused to allow the victims to leave when they attempted to escape or expressed a desire to engage in a drug rehabilitation program. The defendant threatened to blackmail at least

one victim who expressed a desire to call the police so that she could escape, threatening that he would plant drugs on her person when law enforcement arrived. The defendant retaliated against the victims who violated his rules or otherwise displeased him in a number of ways, including abandoning them at customers' homes and on roadsides without their belongings or transportation.

On multiple occasions, victims overdosed in the defendant's presence. The defendant refused to call 911 or to help the overdosed victims, and abandoned them at customers' residences or other locations in order to continue forcing the other victims to engage in commercial sex acts. On multiple occasions, victims called 911 seeking help for other victims who had overdosed at the defendant's apartment. If another victim would call 911 for the overdosed victim, the defendant would get angry at them and throw them out. At least two of the individuals trafficked by the defendant have died of drug overdoses, including one of the minor females.

The defendant maintained several different Facebook accounts, under alias names, including, but not limited to "Alex Pereira" and "Arnol Juares," and used them to offer the victims "boy" (heroin) and "girl" (crack cocaine) in exchange for engaging in commercial sex with his customers. Facebook is an instrumentality of interstate and foreign commerce. The contents of the defendant's Facebook messages, obtained through search warrants served on Facebook, showed that the defendant extensively used the social media platform to recruit and communicate with victims about arranging commercial sex appointments, providing narcotics, obtaining nude images of victims to provide to his customers, and recruiting the victims' friends into his sex trafficking enterprise. The defendant sent unsolicited messages seeking to recruit potential victims to many Facebook users he had never met or communicated with before. Additionally, the

defendant threatened to send nude photographs of the victims to their Facebook friends and their families, if he felt they were not fully complying with his demands.

The defendant also directed the victims working for him to recruit their friends, many of whom were also addicted to narcotics, to engage in commercial sex for his financial benefit.

The defendant frequently forced the victims to engage in sex acts with him, free of charge, at times when they were unconscious or asleep. The defendant retaliated against the victims if he was not personally satisfied with the sexual encounter. This unwanted sex included forced anal sex and biting. If the victims refused to have sex with him, the defendant would refuse to provide the victims with the narcotics to which they were addicted. If they cried during a sexual encounter with the defendant, he would hold them down and become even more forceful. The defendant repeatedly called the victims degrading names and mistreated them both verbally and physically in front of other victims.

The defendant maintained a network of friends and associates who paid to engage in commercial sex acts with the victims advertised and made available to them. The defendant sent his customers pictures of the victims available for commercial sex and set the prices that customers would pay to engage in sex acts with the victims he controlled.

The defendant drove victims to his customers' homes to engage in commercial sex acts, or had other victims drive them at his direction. The defendant also invited customers to engage in commercial sex acts with victims in his Baltimore County apartment, and in Baltimore County motel rooms and in an Owings Mills storage unit that he rented.

Victim 1 was a resident of Maryland. Beginning when Victim 1 was approximately 16 years old, and continuing until she was approximately 18 years old, the defendant caused her to

engage in commercial sex acts for his own financial benefit—knowing and reckless disregard of the fact that she was a minor, and having a reasonable opportunity to observe her.

Victim 2, Victim 3, Victim 4, Victim 5, Victim 6, Victim 7, and Victim 8 were women over the age of 18 and residents of Maryland. The defendant caused Victim 2, Victim 3, Victim 4, Victim 5, Victim 6, Victim 7, and Victim 8 to engage in commercial sex acts for his own financial benefit, by means of force, fraud and coercion. Victims 2 through 8 each suffered from serious substance abuse disorders.

### III.    THE SEARCH WARRANTS WERE EACH SUPPORTED BY AMPLE PROBABLE CAUSE

**1. April 18, 2019 Federal Search Warrant**

On April 18, 2019, United States Magistrate Judge J. Mark Coulson issued warrants authorizing the search of the following:

> i.     Five Facebook accounts, including, *inter alia*, the following accounts which the defendant challenges the issuance of in his motion to suppress:
>
> > a. User Name Felix Hernandes (ID 100012342243524);
> >
> > b. User Name Fleix Hernandez (ID 100013747926011);
> >
> > c. User Name Julio Hernan (ID 100012304390387);
>
> ii.     Two Google Accounts, including, *inter alia*, the following account which the defendant challenges the issuance of in his motion to suppress:
> > a. Williamjuares4@gmail.com.

Attached as Exhibit 1.

In support of the applications seeking these warrants, Homeland Security Investigations (HSI) Special Agent Michael D'Angelo submitted an affidavit establishing probable cause that each of these locations would contain evidence of the listed criminal offenses. The affidavit sets forth evidence that the defendant had used a number of online aliases to communicate with

females, including minors, and recruit them to engage in commercial sex acts.   The affidavit also explains that the defendant additionally used the accounts to communicate with male customers, and to direct the females to engage in commercial sex acts with the male customers.

Specifically, the affidavit describes that a confidential source reported that the defendant, who goes by the name of "Alex," had been contacting young females through multiple alias Facebook accounts and offering them drugs in exchange for having sex with his clients. Ex. 1 ¶ 16. The affidavit goes on to describe that the source believed at least one of the young females was a minor, the details of how the defendant treated the females, where he had them engage in commercial sex acts, and the specific names of the defendant's Facebook accounts ("Alex Pereira" and "Arnol Juares"). *Id*. ¶¶ 17-19.   The source advised that Female 1 helped the defendant recruit females through her Facebook account as well and provided Female 1's Facebook name.   *Id*. ¶ 19.

The affidavit goes on to describe further investigation and surveillance conducted, which corroborated much of the confidential source had provided. For example, the affidavit explains that Baltimore County Police had obtained an Order for GPS tracking on two different vehicles registered to the defendant, after conducting surveillance and witnessing him utilize the vehicles.[1] *Id*. ¶¶ 20, 22-23.   During the tracking of the 4-Runner on March 2, 2019, law enforcement observed activity by the defendant indicative of prostitution. *Id*. ¶ 22.   While conducting surveillance on March 15, 2019, law enforcement tracked the defendant to a hotel room that he had rented with two females.   When law enforcement was granted access to this room, they recovered unused and used condoms, and Cocaine.   *Id*. ¶ 23.   While conducting surveillance at

---

1 These vehicles, a Toyota 4-Runner and a Honda, were later searched pursuant to the lawful May 21, 2019 Search Warrant described *infra*.

the same hotel on March 30, 2019, officers recovered used and unused condoms from the hotel room the defendant and Female 1 had been in, as well as Cocaine.   *Id*. ¶ 24.

The affidavit summarizes the results of a Facebook search warrant obtained by the Baltimore County Police on February 6, 2019, for Female 1's Facebook account and the two Facebook accounts the source had originally provided for the defendant, Alex Pereira and Arnol Juares.   *Id*. ¶¶ 25-32. That Baltimore County search warrant ("State search warrant") is attached hereto as Exhibit 1A.   However, it should be noted that the defendant does not challenge this State search warrant and the search of the Alex Pereira and Arnol Juares Facebook accounts in his motion, but rather lists only the three Facebook User ID's associated with this April 18, 2019 Federal search warrant, for the Felix Hernandes, Felix Hernandez, and Julio Hernan accounts, as being challenged.

The affidavit in support of the State search warrant also provides great detail about the information that the confidential source had provided and is supported by ample probable cause. The affidavit in support of the State search warrant also explains that the detective had done an open source search for the Facebook accounts, and discovered that all of the pictures on each account were of several different young women posing in the pictures, some just in their underwear.   Ex. 1A at pp. 2-3. The affidavit provides that the Vice Unit, who specializes in investigation of prostitution and human trafficking, was consulted, who also reviewed the accounts, and provided that in their expertise, the Facebook pages appeared to be advertisements for solicitation for prostitution with the young women displayed on each Facebook page.   *Id*. pg. 3.

The Federal search warrant affidavit dated April 18, 2019 explains how the additional Facebook accounts, which were the subject of this Federal warrant were discovered from the

review of the review of the Arnol Juares and Alex Pereira Facebook accounts (obtained from the State search warrant) and how they corroborated the belief that these additional accounts were associated with the defendant.   For example, Felix Hernandes's account contains photos of the Facebook profile pictures for both Alex Pereira and Arnol Juares, as well as Felix Hernandez, another suspected alias account for the defendant. Ex. 1 ¶ 33. The Felix Hernandez account contained the same profile picture as the Facebook page for Alex Pereira. *Id*. ¶ 34.   Finally, the affidavit explains the Julio Hernan Facebook account was friends with numerous females identified in conversations about commercial sex from the defendants' other Facebook accounts, and contained numerous photos of females wearing little clothing, just like the defendant's other accounts.   *Id*. ¶ 35.

### 2.   April 30, 2019 Search Warrant

On April 30 Chief United States Magistrate Beth P. Gesner issued warrants authorizing the search of the following:

i.   Samsung J3 Emerge Model SM-J327P cell phone;

ii.   Samsung J3 Model SM-J327T1 cell phone;

iii.   Motorola Moto E5 Play Model XT1921-3 cell phone;

iv.   Apple iPhone 6s Model A1633 cell phone; and

v.   ZTE Model TempoX, which the defendant does not cite in his motion to suppress, so the Government concludes he is not challenging the search of this device.

Attached as Exhibit 2.

In support of the application seeking the warrant to search these devices, HSI Special Agent Michael D'Angelo submitted an affidavit establishing probable cause that each of these devices would contain evidence of the listed criminal offenses. The affidavit sets forth evidence, some of which is the same background of the investigation provided in the April 18, 2019 Federal

8

search warrant—the information that a confidential source had provided about the defendant, the surveillance conducted throughout March 2019, and detailed information gleaned from the search warrants for the defendant's Facebook accounts, which was all indicative of commercial sex and sex trafficking. Ex. 2 ¶¶ 8-30. As just one example of the many quotes of Facebook messages the defendant sent to girls to recruit them to engage in commercial sex which are detailed in the affidavit, the affidavit explains that the defendant told one female "I give boy [heroin] you can sleep here my house just give sex."   He then stated, "When I pick you up that's when we start.   I need to take a picture of you for my customers and we go from there…we work all night and I bring you back home later tonight half money for me you." Ex. 2 ¶ 25.

The affidavit details an incident on March 22, 2019, where law enforcement observed the defendant, Female 1, and Female 2 enter a vehicle, and then observed Female 1 light up a crack pipe and smoke from it. Ex. 2 ¶ 31.   After eventually making lawful contact occupants of the vehicle, including the defendant (who was driving the vehicle), police observed multiple items of drug paraphernalia inside the vehicle in plain view; a lawful search of the vehicle revealed multiple items of drug paraphernalia and controlled substances, as well as the devices listed above that were the subject of this Federal warrant.   Ex. 2 ¶¶ 32-35.

The Apple iPhone 6S was seized from the front passenger's seat where Female 1 had been seated, and law enforcement had observed Female 1 place the phone on the seat.   Ex. 2 ¶ 38.   A forensic review of the phone later confirmed that this phone belonged to Female 1, so the defendant does not have standing to challenge the search of this device.   It is well-settled that to challenge a search successfully under the Fourth Amendment, a defendant must have a "reasonable expectation of privacy" in the item or place searched.   *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

As to the remaining three devices from this warrant which the defendant challenges the search of and for which he may have standing to challenge (the Samsung J3 Emerge Model SM-J327P cell phone; Samsung J3 Model SM-J327T1 cell phone; and Motorola Moto E5 Play Model XT1921-3 cell phone), there is ample probable cause to support the issuance of this warrant, which was signed by the Chief United States Magistrate Judge of this District.   What's more, the affiant includes language that through his training and experience, he knows that electronic devices of individuals engaged in the commercial sex industry often contain records, messages, videos, and pictures related to commercial sex.   Ex. 2 ¶ ¶ 41, 42.

### 3.  May 21, 2019 Search Warrant

On May 21, 2019, United States Magistrate Judge A. David Copperthite issued warrants authorizing a search of the following:

      i.      1 Hiawatha Court, Apartment C, Owings Mills, Maryland;

      ii.     2005 Honda with Maryland tag7DM9724; and

      iii.    1997 Toyota 4-Runner with Maryland tag 3BZ6992.

Attached as Exhibit 3.

In support of the application seeking the warrant to search these devices, HSI Special Agent Michael D'Angelo submitted an affidavit establishing probable cause that each of these devices would contain evidence of the listed criminal offenses. The affidavit sets forth evidence, some of which is the same background of the investigation provided in the prior search warrants—the information that a confidential source had provided about the defendant, the surveillance conducted throughout March 2019, and detailed information gleaned from the search warrants for the defendant's Facebook accounts, which was all indicative of commercial sex and sex trafficking. Ex. 3 ¶¶ 8-25.   The affidavit includes numerous quotes from the defendants'

Facebook accounts, which paint a clear picture of his involvement in commercial sex; for example, in one message, the affidavit quotes messages from January 1, 2019, where the defendant tells Female 1, "You customers coming here 10 minutes."   And the defendant directs Female 1 around in messages, such as "When you finish drive another customer for 80" or "Two more people there for 50 each."   The affidavit quotes him telling Female 1, "Let me know when you have another girl ready to make money." Ex. 3 ¶ 20.

Finally, the affidavit describes that the defendant had renewed his Maryland driver's license less than one month prior to the application for the search warrant (on April 25, 2019) and listed his address as 1 Hiawatha Court, and his vehicles as the two vehicles for which the warrant was sought.   Ex. 3 ¶ 26. And the apartment complex confirmed that a "Cesar Diaz Martinez" was the leaseholder for the Hiawatha Court residence for which the warrant was sought. Ex. 3 ¶ 8-27.

**4.   May 22, 2019 Search Warrant**

On May 22, 2019, United States Magistrate Judge A. David Copperthite issued warrants authorizing the search of the following:

> i.   Hotel room located at 1721 Reisterstown Road (Room #244) in Pikesville, Maryland; and
>
> ii.   Storage unit located at Reisterstown Mini-Storage (Unit #206), 10624 Reisterstown Road, Owings Mills, Maryland.

Attached as Exhibit 4.

While these search warrants and the documents submitted in support thereof were previously provided to the defendant in discovery, he does not challenge the issuance of these search warrants in his motion.   The defendant lists out the searches he is challenging (and said list does not include a search of this hotel room and storage unit), and then writes, "The search and seizure

11

conducted pursuant to each of the <u>above-listed</u> warrants violated the Fourth Amendment to the United States Constitution."   ECF 38, ¶ 3 (emphasis added).

**5. August 14, 2019 Search Warrant**

On August 14, 2019, United States Magistrate Judge A. David Copperthite issued warrants authorizing the search of the following:

i.   A Microsoft account not associated with the defendant and not challenged in his motion;

ii.   The Google account associated with wiliamjuares4@gmail.com; and

iii.   Three Facebook accounts, not challenged in his motion to suppress, to include:
a. The Alex Pereira account (User ID ending in 2709);
b. The Arnol Juares account (User ID ending in 1676); and
c. Female 1's Facebook account.

Attached hereto as Exhibit 5.

In support of the application seeking the warrant to search these accounts, HSI Special Agent Michael D'Angelo submitted an affidavit establishing probable cause that each of the accounts would contain evidence of the listed criminal offenses. As was the case with the prior warrants, the affidavit again sets forth detailed evidence, some of which is the same background of the investigation provided in the prior search warrants—the information that a confidential source had provided about the defendant, the surveillance conducted throughout March 2019, and information gleaned from the search warrants for the defendant's Facebook accounts, which was all indicative of commercial sex and sex trafficking. Ex. 5 ¶¶ 15-18.

As to the wiliamjuares4@gmail.com account, this search warrant affidavit sought records that were attempted to be recovered from the April 18, 2019 search warrant (Exhibit 1), but investigators had later discovered that the April 18th warrant had spelled the name "William" with two letter "l"s, when in fact, "Wiliam" in the email address was just spelled with one letter "l."

Ex. 5 ¶ 19, fn 1.   Therefore, another Federal Magistrate Judge had already determined there was probable cause to search this account, and a second Judge agreed when on August 19, 2019 Judge Copperthite issued this warrant. As the affidavit explains, the Alex Pereira search warrant results contained a registered email for the defendant of this wiliamjuares4@gmail.com email address. *Id*. ¶ 19.

      **IV.**    <u>**LEGAL ANALYSIS**</u>

      **a.**  **Probable cause to search**

After a search warrant has been issued, a review of the probable cause determination made by a judicial officer is to be given "great deference." *United States v. Blackwood,* 913 F. 2d 139, 142 (4th Cir. 1990).   The reviewing court is not permitted to conduct a de novo determination of probable cause, but rather "to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."   *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). *Accord Illinois v. Gates*, 462 U.S. 213, 231-38 (1983).

The probable cause standard is a low one.   It merely requires "a fair probability that contraband or evidence of a crime will be found in a particular place."   *Gates*, at 238.   Further, probable cause may be established through information from any reliable source(s). *Draper v. United* States, 358 U.S. 307, 313 (1959).

The warrants involved in this case did not even rely on an anonymous tipster, hearsay statements, or the like, which would all be permissible. Rather, the warrant affidavits here included corroborated information, surveillance, direct observations of the defendant's behavior, and direct quotes from his Facebook accounts.

      **b.**  **The defendant is not entitled to a *Franks* hearing**

In paragraph 7 of his motion at ECF 38, the Defendant makes a bald, unsupported claim that "Because the investigation of this case is incomplete, Mr. Diaz-Martinez reserves the right to move for

suppression of evidence based on grounds not now discernable such as, but not limited to, rights under *Franks v. Delaware,* 438 U.S. 154, 165 (1978)."

In *Franks*, 438 U.S. 154 (1978), the Supreme Court held that in order for a defendant to obtain a hearing regarding the veracity of a sworn statement in a search warrant affidavit, the defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that the "allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56.   However, the Supreme Court recognized that there is a "presumption of validity with respect to the affidavit supporting the search warrant."   *Id.* at 171.   No hearing is necessary, however, if "the material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Franks*, 438 U.S. at 171-72.   The Fourth Circuit has held that the defendant's burden both in attacking a facially sufficient warrant and making a preliminary showing that a *Franks* hearing is warranted is a "heavy" one.   *United States v. Jeffus*, 22 F.3d 554, 558 (4th Cir. 1994).

*Franks* also applies to omissions but in order to obtain a hearing based on *omitted* statements, the defendant must make "a substantial preliminary showing" "that the affiant omitted material facts with the intent to make, or in reckless disregard of whether he thereby made, the affidavit misleading."   *United States v. Shorter*, 328 F.3d 167, 170 (4th Cir. 2003) (internal citations omitted).   "This showing requires a detailed offer of proof" and "allegations of negligence or innocent mistake are insufficient" and the "defendant must also show that the omitted material was necessary to the finding of probable cause" or, in other words that, "the omitted material was such that its inclusion in the affidavit would defeat probable cause."   *Id.* (internal citations omitted).

"When relying on an omission, rather than on a false affirmative statement, [the defendant's] burden increases yet more." *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008). "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Colkey*, 899 F.2d 297, 300 (4th Cir. 1990). "And because every piece of information cannot be expected to be included, the very process of selecting facts to include for the demonstration of probable cause must also be a deliberate process of omitting pieces of information.   Certainly, such intentional omissions do not satisfy the requirements of *Franks*." *Tate*, 524 F.3d at 455. "Issuing courts must tolerate the possible inaccuracy of an informant's evidence so long as the issuing court is not deliberately misled." *United States v. Ray*, 2007 WL 2116463, at *4 (4th Cir. July 24, 2007) (unpublished). As the Fourth Circuit has pointed out:

> If we desire to encourage the use of the warrant process by police officers, the worst course of action would be to pick apart warrant affidavits from the pristine perch of hindsight or to penalize officers for securing what the law requires.  Obtaining a warrant is a process overseen by a neutral magistrate. Magistrates make an independent judgment about the sufficiency of the warrant affidavit.  They are free to reject warrant applications that provide scant or insufficient evidence.   Indeed, an important rationale for the *Franks* ruling was a respect for the warrant process and the capabilities of magistrates.

*United States v. Clenney*, 631 F.3d 658, 665 (4th Cir. 2011).

In this case, the defendant has not and cannot point to a single false or misleading statement or omission made by Special Agent D'Angelo in the warrant affidavits.   Even if the defendant *could* satisfy the first prong of *Franks*, he cannot satisfy the second as he cannot show that inclusion of this information would have defeated probable cause.

      **c.   Any Identifications were made by witnesses who were intimately familiar with the defendant, and there is no basis for suppression**

First, the defendant asserts that "multiple alleged victims identified Mr. Diaz-Martinez to law enforcement, either by way of a show-up, photo array or a single photo identification."   ECF 39, ¶ 2.   No witnesses or victims were shown formal photo arrays, participated in show-ups, or identified the defendant in a line-up. Each of the victims and witnesses involved in this case was intimately familiar with the defendant, and had an extensive opportunity to observe him, and communicate with him.

The Due Process Clause protects a suspect or defendant against pretrial identification procedures which are impermissibly suggestive or otherwise conducive to mistaken identification. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). To prevail on a motion to suppress an identification, the defendant must first show that the procedure was impermissibly suggestive, but even then, the court still must analyze whether the identification was nevertheless reliable under the "totality of the circumstances."   *Id*., at 114-117.   There are five factors to be considered in determining whether an impermissibly suggestive pretrial identification is nevertheless reliable and admissible, including: "(1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention at the time; (3) the accuracy of the witness's initial description of the suspect; (4) the length of time between the crime and the identification." *United States v. Saunders*, 501 F. 3d 384, 389-90 ) (4th Cir. 2007), *cert. denied*, 139 S.Ct. 270 (2018).

Here, even assuming some pretrial identification occurred that was impermissibly suggestive, and the Court had to even proceed to the point of analyzing these factors, the factors each weigh in favor of reliability and admissibility.   To be clear, some of the witnesses in this case were shown several photographs in the context of a pre-grand jury interview and/or during their grand jury testimony, and they often identified numerous individuals associated with the

16

investigation by name, including the defendant, commercial sex customers, and other victims. This occurred after the witness had already provided information indicating that they knew the defendant well and had significant interactions with him.   This is not a case involving a bank robbery or carjacking, where the defendant was not known to the victim and witnesses, and their ability to observe the perpetrator was brief.

Here, the victims spent days, weeks, and usually several months in the defendant's direct presence.   They communicated with him, they rode in a car with him, and many of them, albeit unwillingly, had sex with him.   The factors laid out in *Saunders* are clearly focused on preventing an impermissible identification from coming into evidence when it could be unreliable because the witness may have been mistaken about who the actual perpetrator was.   In this case, there was no impermissibly suggestive identification, but surely, even if there were, the identifications are reliable because they were each made by someone who had ample opportunity to observe the defendant.

## V.   **CONCLUSION**

The Government respectfully submits that, for these reasons, the defendant's motion to Suppress Evidence Seized Pursuant to Search Warrants (ECF 38) and Motion to Suppress In and Out-of-Court Identification (ECF 39) should be DENIED.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By:   *Mary W. Setzer*
Mary W. Setzer
Assistant United States Attorney
36 South Charles Street
Baltimore, Maryland 21201
(410) 209-4800

17