IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. ELH-19-0358 |
| | * | |
| FELICIANO DIAZ-MARTINEZ, | * | |
| a/k/a "Alex," | * | |
| | * | |
| Defendant. | | |

********

**MEMORANDUM**

In this sex trafficking case, the government has filed a motion in limine, seeking to use at trial the grand jury testimony of a deceased witness, referred to by the government as "Victim 2" and by the defendant as "Witness 2."[1]

Feliciano Diaz-Martinez, a Guatemalan citizen, was indicted on July 25, 2019, and charged with multiple offenses, including sex trafficking of a minor. ECF 1. A Superseding Indictment was filed on October 3, 2019. ECF 19. And, a Second Superseding Indictment was filed on September 16, 2021. ECF 64. Trial is scheduled to begin on November 2, 2021.[2]

The Second Superseding Indictment alleges that from 2016 through on or about May 22, 2019, defendant caused more than 25 individuals, including minors, to engage in commercial sex acts. ECF 64, ¶ 6. The indictment also alleges that the defendant demanded that the victims engage in sex acts with him. *Id.* ¶ 10. Nearly all of the alleged victims suffered from serious substance abuse disorders. *Id.*, ¶ 7.

---

[1] Hereinaftter, I shall adopt the defendant's terminology of "Witness 2."

[2] Delays were occasioned by the COVID-19 pandemic and a change in defense counsel.

In particular, the Second Superseding Indictment contains 12 counts, as follows:  sex trafficking of a minor, Victim 1, in violation of 18 U.S.C. § 1591(a), (b)(2), and (c) (Count One); enticement of a minor, "Victim 1," on April 3, 2018, to engage in prostitution, in violation of 18 U.S.C. § 2422(b) (Count Two); seven counts of sex trafficking by fraud, force, and coercion, involving Victims 2, 3, 4, 5, 6, 7, and 8, in violation of 18 U.S.C. § 1591(a) and (b)(1) (Counts Three through Nine); conspiracy to distribute controlled substances between 2017 and May 22, 2019, in violation of 21 U.S.C. § 846 (Count Ten); possession with intent to distribute ("PWID") controlled substances on April 22, 2019, in violation of 21 U.S.C. § 841 (Count Eleven); and PWID on May 22, 2019, also in violation of 21 U.S.C. § 841 (Count Twelve).

 In a Supplemental Motion in Limine (ECF 67), the government seeks, *inter alia*, to introduce the grand jury testimony of Witness 2, which was provided by her on May 30, 2019. Witness 2 died of a drug overdose after she presented her grand jury testimony.  The government relies on Rule 807(a) of the Federal Rules of Evidence ("F.R.E.").  The grand jury testimony was submitted as an exhibit and I have reviewed it.

The defendant vigorously objects.  ECF 68.  He argues, among other things, that the testimony is not trustworthy.  Moreover, he claims it is cumulative.

The Court held a motions hearing on October 8, 2021, at which argument was presented concerning several defense and government motions.  But, this Motion was left unresolved because of the belated disclosure of critical facts.  Defendant subsequently filed a supplemental objection. ECF 75.

For the reasons that follow, I shall deny the government's Motion.

## I.      Factual Background

As indicated, the government seeks to introduce at trial the grand jury testimony of Witness 2, because she died from a drug overdose after the defendant was indicted.  ECF 67 at 8.  According to the government, it was Witness 2's statements to Baltimore County Police on January 4, 2019, that led to the investigation of defendant.

Months later, on May 30, 2019, Witness 2 testified before a federal grand jury.  *See* ECF 71-1.  She appeared without a lawyer.  *Id.* at 5.  At the outset of her testimony, Witness 2 was advised of the consequences of giving false testimony, including the possibility of incarceration. *Id.* at 5.  Moreover, she was told that if she knowingly made a false statement or told a lie, she could be charged with perjury or obstruction of justice and "those crimes carry jail time."  *Id.* Witness 2 was asked if she understood and she answered in the affirmative.  She was also told that what she said in her testimony could be used against her in a subsequent legal proceeding.  *Id.* Again, she indicated that she understood, and added that she was "really nervous."  *Id.* at 6.

Among other things, Witness 2 testified that she met the defendant in 2017.  *Id.*at 6.  She last saw him on November 25, 2018.  *Id.* at 11.  According to Witness 2, defendant used multiple names and multiple Facebook accounts to "lure girls in."  *Id.* at 14.  She claimed that whenever she was working for the defendant, he made her have sex with him "Every time."  *Id.* at 33.  And, she acquiesced in order to obtain drugs from him.  *Id.*  Although Witness 2 told the defendant that she did not want to engage in sex, he told her she would not get any drugs unless she did so.  *Id.* at 33-34.

At the motions hearing on October 8, 2021, the Court learned for the first time that Witness 2 had previously been charged in an armed robbery of defendant at a Ramada Inn on November

25, 2018.[3]  Moreover, the Court learned that when Witness 2 spoke to the Baltimore County police on January 4, 2019, she was in custody facing charges of armed robbery of the defendant on November 25, 2018.  *See* ECF 75-1; *see also* ECF 75 at 2.  And, the Court also learned for the first time that Witness 2 had a prior criminal record.  Moreover, at the time of her grand jury appearance, Witness 2 was on probation in Baltimore County for a felony offense.  *See* ECF 75-4; ECF 75 at 3-4.  It is not clear why none of this information had been disclosed to the Court prior to the hearing.

As to the armed robbery of defendant, Witness 2 allegedly conspired with Witness 6 (identified by the government as Victim 6) and two others to commit the armed robbery of the defendant on November 25, 2018.  *See* ECF 75-2.  During the incident, Mr. Diaz-Martinez suffered injuries to his arm and head and was hospitalized.  The men who actually attacked Mr. Diaz-Martinez had met with Witnesses 2 and 6 shortly before the occurrence, and learned from them that Mr. Diaz-Martinez kept his wallet and cash in a pillowcase.

On January 3, 2019, about one month after Witness 2 had been arrested in connection with the robbery of the defendant on November 25, 2018, she was indicted in Baltimore County.  The next day, January 4, 2019, Baltimore County Detective S. Loss and Baltimore County Assistant State's Attorney Dave Lemanski met with Witness 2, at which time she implicated Mr. Diaz-Martinez in a sex trafficking scheme.  ECF 75 at 3.  According to the defense, "these statements . . . resulted in Witness #2's felony case being dismissed[]."  *Id.*  According to the government, this information led to the investigation of the defendant.

_____

[3] As indicated, Witness 2 had mentioned in her grand jury testimony, without further explanation, that she last saw the defendant on November 25, 2018.

With respect to Witness 2's prior record, on July 6, 2015, she was charged with Robbery, Second Degree Assault, and Theft under $100.  She was subsequently convicted of Conspiracy to Commit Robbery and, on February 24, 2016, she received a suspended sentence with supervised probation.  ECF 75 at 4.  On September 18, 2017, a bench warrant was issued for a Violation of Probation ("VOP"), but probation was continued on November 15, 2017.  *Id.*  On November 20, 2018, five days before the incident involving Mr. Diaz-Martinez, another VOP warrant was issued for Witness 2, which was served on December 7, 2018.  *Id.*

In sum, on January 4, 2019, when Witness 2 first spoke with law enforcement about this case, she was facing serious criminal charges as well as a VOP in connection with a prior robbery. Those charges were also pending at the time Witness 2 testified before the grand jury.

Thus, the defendant asserts, ECF 75 at 5-6: "[W]hen Witness #2 testified before the grand jury on May 30, 2019, she had not yet been acquitted of her criminal conduct or absolved of her VOP.  Despite that fact, the Government prepared and led her through the testimony by utilizing leading questions that called for conjecture and without establishing her basis for knowledge, as well as limiting the questions posed by the grand jurors about this robbery and her incarceration."

## II.     Discussion

The analysis begins with the text of F.R.E. 807.  Titled "Residual Exception," it provides:

(a) IN GENERAL.  Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

(1)     the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2)      It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

(b) NOTICE. The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name—so that the party has a fair opportunity to meet it.  The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

The Court may admit hearsay under the residual exception only upon finding that (1) the hearsay has circumstantial guarantees of trustworthiness equivalent to those of the recognized exceptions, (2) it is offered as evidence of a material fact, (3) it is more probative than any other evidence that the proponent can reasonably obtain, and (4) admitting it will best serve the purposes of the Federal Rules of Evidence and the interests of justice.  *United States v. Cunningham*, 761 Fed. App'x 203, 206 (4th Cir. 2019).

The Fourth Circuit recently reiterated: "For a statement to be admissible under Rule 807, it must contain 'guarantees of trustworthineess'. . . ."  *Burgess v. Goldstein*, 997 F.3d 541, 560 (4th Cir. 2021) (citation omitted).  Indeed, trustworthiness is the "hallmark" of F.R.E. 807.  *United States v. Lucas*, 836 Fed. App'x 142, 145 (4th Cir. 2020).  And, because Rule 807 is "a narrow exception" to the rule against hearsay, it "should be utilized only after much consideration and examination."  *United States v. Dunford*, 148 F.3d 385, 392, 394 (4th Cir. 1998) (internal quotation marks omitted).

In assessing the trustworthiness of the declarant, the court must consider the "'totality of the circumstances that surround the making of the statement'" to determine "whether the statement has a 'ring of reliability about it.'"  *Lucas*, 836 Fed. App'x at 146 (citations omitted).  Notably, the requirement of trustworthiness "serves as a surrogate for the declarant's in-court cross examination."  *United States v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995).

As to trustworthiness, the court generally considers, *inter alia*, the character of the witness for truthfulness and honesty; whether the testimony was given voluntarily, under oath, and subject

to cross-examination; the motivation to testify; the extent to which the testimony reflects personal knowledge; corroboration; whether the witness has ever recanted; and the reasons for unavailability. *United States v. Moore*, 824 F.3d 620, 622-23 (7th Cir. 2016); *see also* 30B FED. PRAC. & PROC. EVID. § 7063 (2021 ed.); 8 HANDBOOK OF FED. EVID., § 807:1 (9th ed.).

*Cunningham*, an insurance fraud case, is informative. There, the Court permitted the introduction of two statements made by a person who was the victim of insurance fraud. The victim had died from cancer prior to the issuance of the indictment in that case, in which the defendant was charged with a fraud scheme to obtain the proceeds of a life insurance policy issued to the decedent.

The decedent made one of the statements to her mother, and it was neither recorded nor under oath. The decedent made another statement to a fraud investigator for the insurance company, which also was not recorded or under oath. Given that the victim died before the trial, the government moved in limine to admit the statements under Rule 807. Among other things, the district court permitted the use of the statements, noting that the decedent had "little if any motivation" to lie to either person about whether she intended the defendant to obtain her insurance benefits. *Id.* at 207.

*Harris v. City of Chicago*, 327 F.R.D. 199 (N.D. Ill. 2018), is also instructive. In November 2016, Andre Lepinay filed a civil rights suit under 42 U.S.C. § 1983 against the City of Chicago and several police officers, claiming a violation of the Fourth Amendment by use of excessive force on October 21, 2016. The decedent gave a sworn statement to Chicago's Independent Police Review Authority ("IPRA") about one week after the incident. But, he died in April 2017, during the pendency of the case, without having been deposed. So, the defense never had an opportunity

to cross-examine him.  Nevertheless, the substitute plaintiff urged the court to admit the sworn statement under F.R.E. 807.

The trial court carefully considered the factors under Rule 807:  circumstantial guarantees of trustworthiness, materiality, probative value, the interests of justice, and notice.  *Id.* at 201.  The court allowed the use of the statement.

With respect to trustworthiness, the court observed that a hearsay statement satisfies this element "if it has circumstantial guarantees of trustworthiness 'equivalent to those inherent in the more specific [hearsay] exceptions' in Rules 803 and 804."  *Id.* (citations omitted).  But, the court observed that the circumstantial guarantees of trustworthiness under Rule 807 are not identical to those in Rule 804(b)(1).  If that were so, said the court, there would be no point to Rule 807.  *Id.* at 202.

The first trustworthiness factor, the decedent's reputation for truthfulness, was inconclusive.  The second factor – whether the statement was given voluntarily, under oath, subject to cross examination and penalty for perjury—strongly favored admission.  The court pointed out that the interview was voluntary, under oath, and subject to penalty for perjury.  Although the decedent was not cross-examined by an adverse party, the court observed that "the IPRA investigator drove most of the conversation by asking a lengthy series of clarifying questions after [the decedent] gave a brief account of the incident."  *Id.*  The court reasoned, *id.*:  "That [the decedent] gave a sworn statement under penalty of perjury and responded to many clarifying questions from someone whose job it was to investigate allegations of police misconduct helps to establish that the circumstances of his statement were equivalent to those contemplated in Rule 804(b)(1).

In addition, the court was of the view that the third trustworthiness factor – the decedent's motivation for testifying – also favored the movant.  Of relevance here, the court found no indication that the decedent had any reason to believe the interview "would assist him in his lawsuit."  *Id.*

The case of *United States v. Clarke*, 2 F.3d 81 (4th Cir. 1993), authored by Judge Wilkinson, also provides guidance.  The case involved an earlier version of the residual hearsay exception.

In that case, Michael Clarke was charged with possession with intent to distribute cocaine base.  At his suppression hearing, he testified that he had directed his brother, Christopher, to arrange for delivery of the cocaine.  Christopher Clarke was subsequently indicted for conspiracy with intent to distribute and possession with intent to distribute cocaine base.  At Christopher's trial, his brother, Michael, refused to testify, and he was declared unavailable.  But, the trial judge allowed the introduction of Michael's testimony from his suppression hearing, even though Christopher did not have an opportunity to cross-examine Michael at that hearing.  The trial judge determined that the testimony was reliable and trustworthy because Michael had no motive to lie or to implicate his brother for an ulterior purpose.  The Fourth Circuit affirmed.

The Court referenced several cases in which grand jury testimony has been admitted under the residual exception to the hearsay rule.  *Id.* at 83-84.  Moreover, the Court recognized that the guarantees of trustworthiness are not identical to those in Rule 804(b)(1).  The Court concluded that, under the totality of the circumstances, the guarantees of trustworthiness were sufficient to permit the use of the testimony.

In particular, the Court noted that Michael was questioned at his hearing by his own lawyer and cross-examined by a government lawyer.  The testimony was made under oath.  Further, the

Court observed that Michael knew his statement could not be used against him at trial, "which removed any incentive he might have had to lie to avoid conviction . . . ." *Id.* at 85. Yet, he also knew that if he lied, he could be prosecuted for perjury. *Id.* And, there was no need for Michael to implicate his brother in order to exonerate himself.

The cases cited above are distinguishable from the case at bar. As I see it, with respect to the consideration of trustworthiness, the legal posture of Witness 2 at the time she provided her grand jury testimony is critical.

To be sure, some of the trustworthiness factors favor the admission of Witness 2's grand jury testimony. Unfortunately, Witness 2 has died, and obviously she is unavailable. And, when Witness 2 appeared before the grand jury, she was placed under oath and was told she could be prosecuted for perjury. Moreover, the government asked focused questions and clarified any answers of Witness 2 that were unclear. But, on balance, I cannot find adequate guarantees of trustworthiness. At the time of the grand jury testimony, Witness 2 faced serious criminal charges. In view of those charges, she had significant motivation to answer in a way that would lead the government to regard her as cooperative, so as to help herself, perhaps at the expense of the defendant. And, she was never cross-examined, so her statements were untested. Moreover, given the prior criminal record of Witness 2, there are serious concerns regarding her veracity.

The balance of factors tips in favor of the defendant. An Order follows.

Date: October 21, 2021                                     _____/s/_____

                                                          Ellen L. Hollander
                                                          United States District Judge